(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FLORES-FIGUEROA *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 08–108.   Argued February 25, 2009—Decided May 4, 2009

A federal statute forbidding "[a]ggravated identity theft" imposes a mandatory consecutive 2-year prison term on an individual convicted of certain predicate crimes if, during (or in relation to) the commission of those other crimes, the offender "*knowingly . . .* uses, without lawful authority, *a means of identification of another person.*"   18 U. S. C. §1028A(a)(1) (emphasis added).   After petitioner Flores-Figueroa, a Mexican citizen, gave his employer counterfeit Social Security and alien registration cards containing his name but other people's identification numbers, he was arrested and charged with two immigration offenses and aggravated identity theft.   Flores moved for acquittal on the latter charge, claiming that the Government could not prove that he *knew* that the documents' numbers were assigned to other people.   The District Court agreed with the Government that the word "knowingly" in §1028A(a)(1) does not modify the statute's last three words, "of another person," and, after trial, found Flores guilty on all counts.   The Eighth Circuit affirmed.

*Held:* Section §1028(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person.   As a matter of ordinary English grammar, "knowingly" is naturally read as applying to all the subsequently listed elements of the crime.   Where a transitive verb has an object, listeners in most contexts assume that an adverb (such as "knowingly") that modifies the verb tells the listener how the subject performed the entire action, including the object.   The Government does not provide a single example of a sentence that, when used in typical fashion, would lead the hearer to a contrary understanding.   And courts ordinarily interpret criminal statutes consistently with the ordinary English usage.   See, *e.g., Liparota* v. *United States,* 471 U. S.

419. The Government argues that this position is incorrect because it would either require the same language to be interpreted differently in a neighboring provision or would render the language in that provision superfluous. This argument fails for two reasons. Finally, the Government's arguments based on the statute's purpose and on the practical problems of enforcing it are not sufficient to overcome the ordinary meaning, in English or through ordinary interpretive practice, of Congress' words. Pp. 4–11.

274 Fed. Appx. 501, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, SOUTER, and GINSBURG, JJ., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, in which THOMAS, J., joined. ALITO, J., filed an opinion concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–108

IGNACIO CARLOS FLORES-FIGUEROA, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[May 4, 2009]

JUSTICE BREYER delivered the opinion of the Court.

A federal criminal statute forbidding "[a]ggravated identity theft" imposes a mandatory consecutive 2-year prison term upon individuals convicted of certain other crimes *if,* during (or in relation to) the commission of those other crimes, the offender "*knowingly* transfers, possesses, or uses, without lawful authority, *a means of identification of another person.*" 18 U. S. C. §1028A(a)(1) (emphasis added). The question is whether the statute requires the Government to show that the defendant *knew* that the "means of identification" he or she unlawfully transferred, possessed, or used, in fact, belonged to "another person." We conclude that it does.

I
A

The statutory provision in question references a set of predicate crimes, including, for example, theft of government property, fraud, or engaging in various unlawful activities related to passports, visas, and immigration. §1028A(c). It then provides that if any person who commits any of those other crimes (in doing so) "knowingly

transfers, possesses, or uses, without lawful authority, a means of identification of another person," the judge must add two years' imprisonment to the offender's underlying sentence. §1028A(a)(1). All parties agree that the provision applies only where the offender knows that he is transferring, possessing, or using *something*. And the Government reluctantly concedes that the offender likely must know that he is transferring, possessing, or using that *something* without lawful authority. But they do not agree whether the provision requires that a defendant also know that the *something* he has unlawfully transferred is, for example, a real ID belonging to another person rather than, say, a fake ID (*i.e.*, a group of numbers that does not correspond to any real Social Security number).

Petitioner Ignacio Flores-Figueroa argues that the statute requires that the Government prove that he *knew* that the "means of identification" belonged to someone else, *i.e.*, was "a means of identification *of another person*." The Government argues that the statute does not impose this particular knowledge requirement. The Government concedes that the statute uses the word "knowingly," but that word, the Government claims, does not modify the statute's last phrase ("a means of identification of another person") or, at the least, it does not modify the last three words of that phrase ("of another person").

B

The facts of this case illustrate the legal problem. Ignacio Flores-Figueroa is a citizen of Mexico. In 2000, to secure employment, Flores gave his employer a false name, birth date, and Social Security number, along with a counterfeit alien registration card. The Social Security number and the number on the alien registration card were not those of a real person. In 2006, Flores presented his employer with new counterfeit Social Security and alien registration cards; these cards (unlike Flores' old

alien registration card) used his real name. But this time the numbers on both cards were in fact numbers assigned to other people.

Flores' employer reported his request to U. S. Immigration and Customs Enforcement. Customs discovered that the numbers on Flores' new documents belonged to other people. The United States then charged Flores with two predicate crimes, namely, entering the United States without inspection, 8 U. S. C. §1325(a), and misusing immigration documents, 18 U. S. C. §1546(a). And it charged him with aggravated identity theft, 18 U. S. C. §1028A(a)(1), the crime at issue here.

Flores moved for a judgment of acquittal on the "aggravated identity theft" counts. He claimed that the Government could not prove that he *knew* that the numbers on the counterfeit documents were numbers assigned to other people. The Government replied that it need not prove that knowledge, and the District Court accepted the Government's argument. After a bench trial, the court found Flores guilty of the predicate crimes and aggravated identity theft. The Court of Appeals upheld the District Court's determination. 274 Fed. Appx. 501 (CA8 2008) *(per curiam)*. And we granted certiorari to consider the "knowledge" issue—a matter about which the Circuits have disagreed. Compare *United States* v. *Godin*, 534 F. 3d 51 (CA1 2008) (knowledge requirement applies to "of another person"); *United States* v. *Miranda-Lopez*, 532 F. 3d 1034 (CA9 2008) (same); *United States* v. *Villanueva-Sotelo*, 515 F. 3d 1234 (CADC 2008) (same), with *United States* v. *Mendoza-Gonzalez,* 520 F. 3d 912 (CA8 2008) (knowledge requirement does not apply to "of another person"); *United States* v. *Hurtado*, 508 F. 3d 603 (CA11 2007) *(per curiam)* (same); *United States* v. *Montejo*, 442 F. 3d 213 (CA4 2006) (same).

## II

There are strong textual reasons for rejecting the Government's position. As a matter of ordinary English grammar, it seems natural to read the statute's word "knowingly" as applying to all the subsequently listed elements of the crime. The Government cannot easily claim that the word "knowingly" applies only to the statutes first four words, or even its first seven. It makes little sense to read the provision's language as heavily penalizing a person who "transfers, possesses, or uses, without lawful authority" a *something,* but does not know, at the very least, that the "something" (perhaps inside a box) is a "means of identification." Would we apply a statute that makes it unlawful *"knowingly* to possess drugs" to a person who steals a passenger's bag without knowing that the bag has drugs inside?

The Government claims more forcefully that the word "knowingly" applies to all but the statute's last three words, *i.e.,* "of another person." The statute, the Government says, does not require a prosecutor to show that the defendant *knows* that the means of identification the defendant has unlawfully used in fact belongs to another person. But how are we to square this reading with the statute's language?

In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence. Thus, if a bank official says, "Smith knowingly transferred the funds to his brother's account," we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's. Nor would it matter if the bank official said "Smith knowingly transferred the funds to the account of his brother." In either instance, if the bank official later told us that Smith did not know the

account belonged to Smith's brother, we should be surprised.

Of course, a statement that does *not* use the word "knowingly" may be unclear about just what Smith knows. Suppose Smith mails his bank draft to Tegucigalpa, which (perhaps unbeknownst to Smith) is the capital of Honduras. If the bank official says, "Smith sent a bank draft to the capital of Honduras," he has expressed next to nothing about Smith's knowledge of that geographic identity. But if the official were to say, "Smith *knowingly* sent a bank draft to the capital of Honduras," then the official has suggested that Smith knows his geography.

Similar examples abound. If a child knowingly takes a toy that belongs to his sibling, we assume that the child not only knows that he is taking something, but that he also knows that what he is taking is a toy *and* that the toy belongs to his sibling. If we say that someone knowingly ate a sandwich with cheese, we normally assume that the person knew both that he was eating a sandwich and that it contained cheese. Or consider the Government's own example, "'John knowingly discarded the homework of his sister.'" Brief for United States 9. The Government rightly points out that this sentence "does not *necessarily*" imply that John knew whom the homework belonged to. *Ibid.* (emphasis added). But that is what the sentence, as *ordinarily* used, does imply.

At the same time, dissimilar examples are not easy to find. The Government says that "knowingly" modifies only the verbs in the statute, while remaining indifferent to the subject's knowledge of at least part of the transitive verb's object. In certain contexts, a listener might understand the word "knowingly" to be used in that way. But the Government has not provided us with a single example of a sentence that, when used in typical fashion, would lead the hearer to believe that the word "knowingly" modifies only a transitive verb without the full object, *i.e.*, that

it leaves the hearer gravely uncertain about the subject's state of mind in respect to the full object of the transitive verb in the sentence. The likely reason is that such sentences typically involve special contexts or themselves provide a more detailed explanation of background circumstances that call for such a reading. As JUSTICE ALITO notes, the inquiry into a sentence's meaning is a contextual one. See *post*, at 3 (opinion concurring in part and concurring in judgment). No special context is present here. See *infra*, at 8–10.

The manner in which the courts ordinarily interpret criminal statutes is fully consistent with this ordinary English usage. That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element. *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 79 (1994) (STEVENS, J., concurring). For example, in *Liparota* v. *United States*, 471 U. S. 419 (1985), this Court interpreted a federal food stamp statute that said, "'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards *in any manner not authorized by [law]*'" is subject to imprisonment. *Id.*, at 420, n. 1. The question was whether the word "knowingly" applied to the phrase "in any manner not authorized by [law]." *Id.*, at 423. The Court held that it did, *id.*, at 433, despite the legal cliche "ignorance of the law is no excuse."

More recently, we had to interpret a statute that penalizes "[a]ny person who—(1) knowingly transports or ships using any means or facility of interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U. S. C. §2252(a)(1)(A); *X-Citement Video, supra.* In issue was whether the term "knowingly" in paragraph (1) modified the phrase "the use of a minor"

in subparagraph (A). *Id.*, at 69. The language in issue in *X-Citement Video* (like the language in *Liparota*) was more ambiguous than the language here not only because the phrase "the use of a minor" was not the direct object of the verbs modified by "knowingly," but also because it appeared in a different subsection. 513 U. S., at 68–69. Moreover, the fact that many sex crimes involving minors do not ordinarily require that a perpetrator know that his victim is a minor supported the Government's position. Nonetheless, we again found that the intent element applied to "the use of a minor." *Id.*, at 72, and n. 2. Again the Government, while pointing to what it believes are special features of each of these cases, provides us with no convincing counterexample, although there may be such statutory instances.

The Government correctly points out that in these cases more was at issue than proper use of the English language. But if more is at issue here, what is it? The Government makes a further textual argument, a complex argument based upon a related provision of the statute. That provision applies "[a]ggravated identity theft" where the predicate crime is terrorism. See §1028A(a)(2). The provision uses the same language as the provision before us up to the end, where it adds the words "or a false identification document." Thus, it penalizes anyone who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person or a false identification document." §1028A(a)(2).

The Government's argument has four steps. Step One: We should not interpret a statute in a manner that makes some of its language superfluous. See, *e.g., TRW Inc.* v. *Andrews,* 534 U. S. 19, 31 (2001). Step Two: A person who knows that he is transferring, possessing, or using a "'means of identification'" "'without lawful authority,'" must know that the document either (a) belongs "'to another person'" or (b) is a "'false identification document'"

because "'*there are no other choices.*'"   Brief for United States 14 (emphasis added).   Step Three: Requiring the offender to *know* that the "means of identification" belongs to another person would consequently be superfluous in this terrorism provision.   Step Four: We should not interpret the same phrase ("of another person") in the two related sections differently.

If we understand the argument correctly, it seems to suffer two serious flaws.   If the two listed circumstances (where the ID belongs to another person; where the ID is false) are the only two circumstances possibly present when a defendant (in this particular context) unlawfully uses a "means of identification," then why list them at all? Why not just stop after criminalizing the knowing unlawful use of a "means of identification"?   (Why specify that Congress does not mean the statute to cover, say, the use of dog tags?)   The fact is, however, that the Government's reasoning at Step Two is faulty.   The two listed circumstances are *not* the only two circumstances possibly present when a defendant unlawfully uses a "means of identification."   One could, for example, verbally provide a seller or an employer with a made-up Social Security number, not an "identification *document,"* and the number verbally transmitted to the seller or employer might, or might not, turn out to belong to another person.   The word "knowingly" applied to the "other person" requirement (even in a statute that similarly penalizes use of a "false identification *document*") would not be surplus.

The Government also considers the statute's purpose to be a circumstance showing that the linguistic context here is special.   It describes that purpose as "provid[ing] enhanced protection for individuals whose identifying information is used to facilitate the commission of crimes."   *Id.*, at 5.   And it points out that without the knowledge requirement, potential offenders will take great care to avoid wrongly using IDs that belong to others, thereby enhanc-

ing the protection that the statute offers.

The question, however, is whether Congress intended to achieve this enhanced protection by permitting conviction of those who do not *know* the ID they unlawfully use refers to a real person, *i.e.*, those who do not *intend* to cause this further harm. And, in respect to this latter point, the statute's history (outside of the statute's language) is inconclusive.

On the one hand, some statements in the legislative history offer the Government a degree of support. The relevant House Report refers, for example, both to "identity theft" (use of an ID belonging to someone else) and to "identity fraud" (use of a false ID), often without distinguishing between the two. See, *e.g.,* H. R. Rep. No. 108–528, p. 25 (2004) (statement of Rep. Coble). And, in equating fraud and theft, Congress might have meant the statute to cover both—at least where the fraud takes the form of using an ID that (without the offender's knowledge) belongs to someone else.

On the other hand, Congress separated the fraud crime from the theft crime in the statute itself. The title of one provision (not here at issue) is "Fraud and related activity in connection with identification documents, authentication features, and information." 18 U. S. C. §1028. The title of another provision (the provision here at issue) uses the words "identity *theft*." §1028A (emphasis added). Moreover, the examples of theft that Congress gives in the legislative history all involve instances where the offender would know that what he has taken identifies a different real person. H. R. Rep. No. 108–528, at 4–5 (identifying as examples of "identity theft" "'dumpster diving,'" "accessing information that was originally collected for an authorized purpose," "hack[ing] into computers," and "steal[ing] paperwork likely to contain personal information").

Finally, and perhaps of greatest practical importance, there is the difficulty in many circumstances of proving

beyond a reasonable doubt that a defendant has the neces-
sary knowledge. Take an instance in which an alien who
unlawfully entered the United States gives an employer
identification documents that *in fact* belong to others.
How is the Government to prove that the defendant *knew*
that this was so? The Government may be able to show
that such a defendant knew the papers were not his. But
perhaps the defendant did not care whether the papers (1)
were real papers belonging to another person or (2) were
simply counterfeit papers. The difficulties of proof along
with the defendant's necessary guilt of a predicate crime
and the defendant's necessary knowledge that he has
acted "without lawful authority," make it reasonable, in
the Government's view, to read the statute's language as
dispensing with the knowledge requirement.

We do not find this argument sufficient, however, to
turn the tide in the Government's favor. For one thing, in
the classic case of identity theft, intent is generally not
difficult to prove. For example, where a defendant has
used another person's identification information to get
access to that person's bank account, the Government can
prove knowledge with little difficulty. The same is true
when the defendant has gone through someone else's trash
to find discarded credit card and bank statements, or
pretends to be from the victim's bank and requests per-
sonal identifying information. Indeed, the examples of
identity theft in the legislative history (dumpster diving,
computer hacking, and the like) are all examples of the
types of classic identity theft where intent should be rela-
tively easy to prove, and there will be no practical en-
forcement problem. For another thing, to the extent that
Congress may have been concerned about criminalizing
the conduct of a broader class of individuals, the concerns
about practical enforceability are insufficient to outweigh
the clarity of the text. Similar interpretations that we
have given other similarly phrased statutes also created

practical enforcement problems. See, *e.g., X-Citement Video,* 513 U. S. 64; *Liparota,* 471 U. S. 419. But had Congress placed conclusive weight upon practical enforcement, the statute would likely not read the way it now reads. Instead, Congress used the word "knowingly" followed by a list of offense elements. And we cannot find indications in statements of its purpose or in the practical problems of enforcement sufficient to overcome the ordinary meaning, in English or through ordinary interpretive practice, of the words that it wrote.

We conclude that §1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 08–108

IGNACIO CARLOS FLORES-FIGUEROA,
PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[May 4, 2009]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins,
concurring in part and concurring in the judgment.

I agree with the Court that to convict petitioner for
"knowingly transfer[ring], possess[ing], or us[ing], without
lawful authority, a means of identification of another
person," 18 U. S. C. §1028A(a)(1), the Government must
prove that he "*knew* that the 'means of identification' he
. . . unlawfully transferred, possessed, or used, in fact,
belonged to 'another person.'" *Ante*, at 1. "Knowingly" is
not limited to the statute's verbs, *ante,* at 4. Even the
Government must concede that. See *United States* v.
*Villanueva-Sotelo*, 515 F. 3d 1234, 1237 (CADC 2008)
("According to the government, this text is unambiguous:
the statute's knowledge requirement extends only so far as
'means of identification'"). But once it is understood to
modify the object of those verbs, there is no reason to
believe it does not extend to the phrase which limits that
object ("of another person"). Ordinary English usage
supports this reading, as the Court's numerous sample
sentences amply demonstrate. See *ante*, at 4–5.

But the Court is not content to stop at the statute's text,
and I do not join that further portion of the Court's opin-
ion. First, the Court relies in part on the principle that
"courts ordinarily read a phrase in a criminal statute that
introduces the elements of a crime with the word 'know-

ingly' as applying that word to each element." *Ante*, at 6. If that is meant purely as a description of what most cases do, it is perhaps true, and perhaps not. I have not canvassed all the cases and am hence agnostic. If it is meant, however, as a normative description of what courts *should* ordinarily do when interpreting such statutes—and the reference to JUSTICE STEVENS' concurring opinion in *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 79 (1994), suggests as much—then I surely do not agree. The structure of the text in *X-Citement Video* plainly separated the "use of a minor" element from the "knowingly" requirement, wherefore I thought (and think) that case was wrongly decided. See *id.*, at 80–81 (SCALIA, J., dissenting). It is one thing to infer the common-law tradition of a *mens rea* requirement where Congress has not addressed the mental element of a crime. See *Staples* v. *United States*, 511 U. S. 600, 605 (1994); *United States* v. *United States Gypsum Co.*, 438 U. S. 422, 437–438 (1978). It is something else to expand a *mens rea* requirement that the statutory text has carefully limited.

I likewise cannot join the Court's discussion of the (as usual, inconclusive) legislative history. *Ante,* at 9. Relying on the statement of a single Member of Congress or an unvoted-upon (and for all we know unread) Committee Report to expand a statute beyond the limits its text suggests is always a dubious enterprise. And consulting those incunabula with an eye to making criminal what the text would otherwise permit is even more suspect. See *United States* v. *R. L. C.*, 503 U. S. 291, 307–309 (1992) (SCALIA, J., concurring in part and concurring in judgment). Indeed, it is not unlike the practice of Caligula, who reportedly "wrote his laws in a very small character, and hung them up upon high pillars, the more effectually to ensnare the people," 1 W. Blackstone, Commentaries on the Laws of England 46 (1765).

The statute's text is clear, and I would reverse the judgment of the Court of Appeals on that ground alone.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–108

_____

## IGNACIO CARLOS FLORES-FIGUEROA, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[May 4, 2009]

JUSTICE ALITO, concurring in part and concurring in the judgment.

While I am in general agreement with the opinion of the Court, I write separately because I am concerned that the Court's opinion may be read by some as adopting an overly rigid rule of statutory construction. The Court says that "[i]n ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Ante*, at 4. The Court adds that counterexamples are "not easy to find," *ante*, at 5, and I suspect that the Court's opinion will be cited for the proposition that the *mens rea* of a federal criminal statute nearly always applies to every element of the offense.

I think that the Court's point about ordinary English usage is overstated. Examples of sentences that do not conform to the Court's rule are not hard to imagine. For example: "The mugger knowingly assaulted two people in the park—an employee of company X and a jogger from town Y." A person hearing this sentence would not likely assume that the mugger knew about the first victim's employer or the second victim's home town. What matters in this example, and the Court's, is context.

More to the point, ordinary writers do not often construct the particular kind of sentence at issue here, *i.e.*, a complex sentence in which it is important to determine from the sentence itself whether the adverb denoting the actor's intent applies to every characteristic of the sentence's direct object. Such sentences are a staple of criminal codes, but in ordinary speech, a different formulation is almost always used when the speaker wants to be clear on the point. For example, a speaker might say: "Flores-Figueroa used a Social Security number that he knew belonged to someone else" or "Flores-Figueroa used a Social Security number that just happened to belong to a real person." But it is difficult to say with the confidence the Court conveys that there is an "ordinary" understanding of the usage of the phrase at issue in this case.

In interpreting a criminal statute such as the one before us, I think it is fair to begin with a general presumption that the specified *mens rea* applies to all the elements of an offense, but it must be recognized that there are instances in which context may well rebut that presumption. For example, 18 U. S. C. §2423(a) makes it unlawful to "knowingly transpor[t] an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense." The Courts of Appeals have uniformly held that a defendant need not know the victim's age to be guilty under this statute. See, *e.g.*, *United States* v. *Griffith*, 284 F. 3d 338, 350–351 (CA2 2002); *United States* v. *Taylor*, 239 F. 3d 994, 997 (CA9 2001); cf. *United States* v. *Chin*, 981 F. 2d 1275, 1280 (CADC 1992) (Ginsburg, J.) (holding that 21 U. S. C. §861(a)(1), which makes it unlawful to "knowingly and intentionally . . . employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to violate" drug laws, does not require the defendant to have knowledge of the

minor's age). Similarly, 8 U. S. C. §1327 makes it unlawful to "knowingly ai[d] or assis[t] any alien inadmissible under section 1182(a)(2) (insofar as an alien inadmissible under such section has been convicted of an aggravated felony) . . . to enter the United States." The Courts of Appeals have held that the term "knowingly" in this context does not require the defendant to know that the alien had been convicted of an aggravated felony. See, *e.g.*, *United States* v. *Flores-Garcia*, 198 F. 3d 1119, 1121–1123 (CA9 2000); *United States* v. *Figueroa*, 165 F. 3d 111, 118–119 (CA2 1998).

In the present case, however, the Government has not pointed to contextual features that warrant interpreting 18 U. S. C. §1028A(a)(1) in a similar way. Indeed, the Government's interpretation leads to exceedingly odd results. Under that interpretation, if a defendant uses a made-up Social Security number without having any reason to know whether it belongs to a real person, the defendant's liability under §1028A(a)(1) depends on chance: If it turns out that the number belongs to a real person, two years will be added to the defendant's sentence, but if the defendant is lucky and the number does not belong to another person, the statute is not violated.

I therefore concur in the judgment and join the opinion of the Court except insofar as it may be read to adopt an inflexible rule of construction that can rarely be overcome by contextual features pointing to a contrary reading.