Opinion by Judge WARDLAW; Concurrence by Judge W. FLETCHER.
OPINION
WARDLAW, Circuit Judge:
George Jefferson appeals his ten-year mandatory minimum sentence for knowingly and intentionally importing a controlled substance into the United States in violation of 21 U.S.C. §§ 952 and 960. We reject Jefferson’s argument that recent Supreme Court authority requires the government to prove that the defendant knew the specific type and quantity of the drugs he imported in order to trigger the ten-year mandatory minimum under 21 U.S.C. § 960(b)(1)(H). Accordingly, we affirm.
I.
Jefferson entered a guilty plea to one count of knowingly and intentionally importing 4.65 kilograms of a mixture containing methamphetamine into the United States. Jefferson claims that, at the time he crossed the border, he thought the substance he was transporting was marijuana, *1015 not methamphetaraine, and that he did not know how much of the illegal substance was in his truck. At sentencing he contended, among other things,[1] that under the Supreme Court’s decisions in Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) and Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009), knowledge of drug type and quantity were elements of the offense, and that, therefore, the government had to prove he knew the exact drug type and quantity he was transporting for the 10-year mandatory minimum under 21 U.S.C. § 960(b)(1)(H) to apply. The district court concluded that Alleyne and Flores-Figueroa did not abrogate long-established Ninth Circuit precedent that the government is not required to prove that a defendant knew the type or quantity of the controlled substance he imported to be found guilty under § 960. The district court imposed a sentence of 144 months of incarceration, followed by 10 years of supervised release.
II.
We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court’s interpretation of a statute de novo and its application of a statute to the facts for abuse of discretion. United States v. Yazzie, 743 F.3d 1278, 1288 (9th Cir.), cert. denied, — U.S. -, 135 S.Ct. 227, 190 L.Ed.2d 172 (2014).
III.
It is “unlawful ... to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I” of the Controlled Substances Act. 21 U.S.C. § 952(a). Methamphetamine is a schedule II controlled substance. 21 C.F.R. § 1308.12(a), (d)(2). “Any person who ... knowingly or intentionally imports or exports a controlled substance ... shall be punished as provided in [21 U.S.C. § 960(b)].” 21 U.S.C. § 960(a) (citing 21 U.S.C. § 952).
21 U.S.C. § 960(b), entitled “Penalties,” prescribes varying minimum and maximum terms of imprisonment and fines depending on the type and quantity of controlled substance a person imports. For example, a person convicted of importing 500 grams or more of a mixture containing methamphetamine shall be sentenced to a minimum of 10 years imprisonment and a maximum of life imprisonment. Id. § 960(b)(1)(H). A person convicted of importing less than 50 kilograms of marijuana faces no mandatory minimum, and shall be sentenced to a maximum of 5 years imprisonment, a fine not exceeding $250,000, or both. Id. § 960(b)(4).
We have consistently held that a defendant can be convicted under § 960 if he believed he imported or exported some controlled substance. See United States v. Carranza, 289 F.3d 634, 644 (9th Cir.2002); United States v. Ramirez-Ramirez, 875 F.2d 772, 774 (9th Cir.1989); United States v. Rea, 532 F.2d 147, 149 (9th Cir.1976) (per curiam). The government is not required to prove that the defendant knew the type or quantity of the controlled substance he imported to obtain a conviction under § 960(a), Carranza, 289 F.3d at 644, or for the penalties under § 960(b) to apply, see United States v. Salazar, 5 F.3d 445, 446 (9th Cir.1993); United States v. Lopez-Martinez, 725 F.2d 471, 474-75 (9th Cir.1984). Section 960(a) requires a per- *1016 son to “knowingly or intentionally” import a controlled substance; § 960(b) refers to different types and amounts of controlled substances for sentencing purposes.
A.
Jefferson first argues that this long established precedent was abrogated[2] by the Supreme Court’s decision in Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), which held' that any fact that increases the mandatory minimum sentence is an “element” of the offense that must be submitted to the jury and found beyond a reasonable doubt. Id. at 2155. The decision extended the rule of Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in which the Court established that, “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” The Alleyne Court reasoned that “there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum.” 133 S.Ct. at 2163.
Jefferson correctly notes that Al-leyne renders the type and quantity of a controlled substance “elements” of a § 960 offense. Both drug type and quantity can trigger, or increase, a mandatory minimum sentence under § 960(b), and therefore both facts must be proved to a jury beyond a reasonable doubt — or, as here, admitted by the defendant. See Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that facts may be admitted by the defendant “for Apprendi purposes”); United States v. Guerrero-Jasso, 752 F.3d 1186, 1190 (9th Cir.2014) (holding that admissions by the defendant satisfy Apprendi ).[3]
This does not mean, however, as Jefferson urges, that the “knowingly or intentionally” mens rea standard found in § 960(a) applies to the elements found in § 960(b). Alleyne provides no guidance as to which facts increase mandatory minimum sentences under a given statute. It addressed only who must determine such facts, and which burden of proof applies. See United States v. Montalvo, 331 F.3d 1052, 1061 (9th Cir.2003) (Kozinski, J., concurring) (“Apprendi affects only the identity of the decisionmaker and the burden of proof.... ”); United States v. Brough, 243 F.3d 1078, 1079 (7th Cir.2001) (“Apprendi ... make[s] the jury the right decision-maker (unless the defendant elects a bench trial), and the reasonable-doubt standard the proper burden, when a fact raises the maximum lawful punishment.”). Determining which facts increase the mandatory minimum sentence is instead a statute specific inquiry — and Alleyne does not alter our precedent that a defendant’s knowledge of the type and quantity of the controlled substance he imports is not such a fact, and, therefore, not an element of the offense.
Nor do two decisions that postdate the district court’s ruling — Burrage v. United States, — U.S. -, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014), and Rosemond v. United States, — U.S. -, 134 S.Ct. *1017 1240, 188 L.Ed.2d 248 (2014) — require § 960(a)’s “knowingly or intentionally” standard to be applied to drug type and quantity. The Burrage Court examined a twenty-year mandatory minimum that applies when a defendant “knowingly or intentionally ... distribute[s] ... a controlled substance,” 21 U.S.C. § 841(a), and its use results in “death or serious bodily injury,” id. § 841(b)(1)(C).[4] See 134 S.Ct. at 885. In summarizing the charged offense, the Court stated that an element was the “knowing or intentional distribution of heroin.” Id. at 887. The Court’s use of the word “heroin” instead of “controlled substance” does not clearly signal that a defendant must know the type of drug he imports or distributes. The statute’s mens rea standard was not at issue, and the Court’s analysis was devoted entirely to the question of causation: whether § 841(b)(1)(C) “applies when use of a covered drug supplied by the defendant contributes to, but is not a but-for cause of, the victim’s death or injury.” Id. at 885; see also 887-92. “It is unlikely in the extreme that the Supreme Court intended by [a] single sentence to overrule sub si-lentio years of decisional law....” United States v. Fonseca-Caro, 114 F.3d 906, 907 (9th Cir.1997) (per curiam).
In Rosemond, the Court concluded that a defendant charged with aiding and abetting an armed drug sale under 18 U.S.C. §§ 2 and 924(c) must have had “advance knowledge” that one of his confederates would use or carry a gun as part of the crime’s commission, because “a state of mind extending to the entire crime” is necessary for conviction. 134 S.Ct. at 1245, 1248-49. The federal aiding and abetting statute, unlike § 960, derives from common law standards of accomplice liability, a fact which was critical to the Court’s decision. See id. at 1245. Rosemond says nothing about the mens rea required for the crime of importing a controlled substance, or about mens rea requirements generally.
Our conclusion that Alleyne did not change the mens rea requirement for § 960 is further supported by the Sixth Circuit’s decision in United States v. Dado, 759 F.3d 550, 570 (6th Cir.), cert. denied, — U.S. -, 135 S.Ct. 510, 190 L.Ed.2d 361 (2014). Addressing § 841, the Sixth Circuit rejected Dado’s argument that Alleyne effectively overruled its precedent that “the government need not prove mens rea as to the type and quantity of the drugs in order to establish a violation of § 841(b).” Dado, 759 F.3d at 569 (quoting United States v. Villarce, 323 F.3d 435, 439 (6th Cir.2003)). We agree with the Sixth Circuit that this contention confuses the requisite burden of proof with the mens rea standard, and that Alleyne did not — and could not — change the statutory text. See id. at 570.
B.
Nor does the Supreme Court’s decision in Flores-Figueroa, 556 U.S. 646, 129 S.Ct. 1886 (2009), alter the statutory landscape or override our decision in Carranza. In Flores-Figueroa, the Supreme Court examined the crime of aggravated identity theft as set forth in 18 U.S.C. § 1028A — a statute which penalizes a person, who in the commission of other specified crimes, “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.” 18 U.S.C. § 1028A(a)(1). The Court applied ordinary grammatical rules to the text of the statute, reasoning that “where a transitive *1018 verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence.” Flores-Figueroa, 556 U.S. at 650, 129 S.Ct. 1886. The Court concluded that the statute required the government to prove that a defendant knew the identification belonged to another person. Id. This conclusion was also fully consistent with the way “courts ordinarily interpret criminal statutes,” which is to “read a phrase in a criminal statute that introduces the ele-, ments of a crime with the word ‘knowingly’ as applying that word to each element.” Id. at 652, 129 S.Ct. 1886.
The text of § 960(a) and (b) is not structured like that of 18 U.S.C. § 1028A(a)(1). The mens rea standard in § 960(a) is separate and distinct from the penalty ranges set forth in § 960(b). Because § 960’s statutory text and structure are not parallel to that of § 1028A(a)(1), the ordinary grammatical interpretive rules articulated in Flores-Figueroa do not apply here. See United States v. Castagana, 604 F.3d 1160, 1162-63, 1165-66 (9th Cir.2010) (concluding that Flores-Figueroa did not require a particular construction of a statute because the statute at issue was not parallel to the statute in Flores-Figueroa).
Relying on United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), a case cited in-Flores-Figueroa, Jefferson further contends that the presumption that scienter is generally implied in a criminal statute, even when it is not expressed, requires us to read a mens rea element into § 960(b). In X-Citement Video, the Court interpreted a child pornography statute, 18 U.S.C. § 2252 (1988 ed. and Supp. V), that once again had different textual and structural features than § 960,[5] and that, if interpreted in its most natural manner would criminalize a significant amount of innocent behavior. See 513 U.S. at 68-69, 73, 115 5.Ct. 464. The Court there held that the “knowingly” mens rea in § 2252(a)(1) applied to the terms “use of a minor” and “sexually explicit conduct” in § 2252(a)(1)(A). Id. at 78, 115 S.Ct. 464. The Court’s imputation of knowledge to the use of a minor, i.e., requiring the government to prove that the defendant knew that the person depicted in the sexually explicit material was in fact underage, also avoided a potential First Amendment problem. See id. (citing New York v. Ferber, 458 U.S. 747, 764-65, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)).
Here, there is no potential for the penalization of innocent conduct nor do we face constitutional avoidance concerns. If the government must prove that the defendant knew he was importing some amount of a controlled substance, that is sufficient to ensure the statute penalizes only culpable conduct. See United States v. Flores-Garcia, 198 F.3d 1119, 1121-22 (9th Cir.2000) (“Provided the defendant recognizes he is doing something culpable, however, he need not be aware of the particular circumstances that result in greater punishment.”); X-Citement Video, 513 U.S. at 72 n. 3, 115 S.Ct. 464 (“Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does not require knowledge of the precise "consequences that may flow from that act once aware that the act is wrongful.”).[6]
*1019 IV.
Our precedent holding that the government need not prove that the defendant knew the precise type or quantity of the drug he imported is not clearly irreconcilable with any of the Supreme Court decisions cited by Jefferson. Because Jefferson knew that he imported a controlled substance into the United States, and because he in fact imported 4.65 kilograms of a mixture containing methamphetamine, the district court did not err in concluding that § 960(b)(1)(H)’s ten-year mandatory minimum term of imprisonment applied.[7]
AFFIRMED.

. Jefferson also objected to the presentence report’s classification of him as a career offender under United States Sentencing Guidelines (U.S.S.G.) § 4B1.1, and to the Probation Office's decision against recommending a minor role reduction in his Guidelines range under U.S.S.G. § 3B1.2. The district court rejected these objections, and Jefferson does not appeal these rulings.

. We may overrule our precedent only if it is clearly irreconcilable with an intervening higher authority. See Miller v. Gammie, 335 F.3d 889, 893 (9th Cir.2003) (en banc). Absent such an intervening higher authority, "a later three-judge panel ... has no choice but to apply the earlier-adopted rule.” Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir.2001).

. A defendant who enters a guilty plea waives his right to a trial by jury, see Florida v. Nixon, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), and therefore also waives Alleyne and Apprendi's protections of that right.

. 21 U.S.C. § 841 is "structurally identical” to § 960. United States v. Mendoza-Paz, 286 F.3d 1104, 1110 (9th Cir.2002). In addition to the "death results” enhancement, § 841(b) also provides different minimum and maximum terms of imprisonment and fines based on the type and quantity of controlled substance distributed. 21 U.S.C. § 841(a)-(b).

. Section 2252 penalizes any person who: "(1) knowingly transports or ships ... in ... interstate or foreign commerce ... any visual depiction, if — (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.” 18 U.S.C. § 2252(a)(1).

. Jefferson also relies upon other principles of statutory construction to support his reading of § 960. He cites Staples v. United States, *1019 511 U.S. 600, 616, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), for the proposition that courts should construe offenses that carry particularly harsh penalties (such as a ten-year mandatory minimum sentence) as requiring a stricter mens rea. He also notes that applying a mens rea of "knowingly" to drug type and quantity is consistent with the principle that any ambiguity in the reach of a criminal statute should be resolved in favor of lenity. Finally, he contends that reading "knowingly or intentionally” into the elements of drug type and quantity is consistent with congressional intent.
We need not consider the strength of these arguments, as we cannot reconsider our precedent or depart from its reasoning unless there is "intervening higher authority” that is "clearly irreconcilable” with the prior decision. Miller, 335 F.3d at 893; see also Hart, 266 F.3d at 1171. Jefferson has not cited to any "intervening higher authority” in support of these positions.

. In Jefferson's reply brief, he also argues that the Information violated due process by not providing him with fair notice of the Government's burden and the charges against him. Jefferson has waived this argument by not raising it in his opening brief. United States v. Romm, 455 F.3d 990, 997 (9th Cir.2006).